UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANDY PRIMM, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV482 JCH |
| ) | |
| THOMAS FINLEY, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Dr. Thomas Finley and Lois Cella's (collectively "Defendants") Motion for Summary Judgment, filed December 3, 2008. (Doc. No. 25). Plaintiff has not responded to the motion.

## BACKGROUND

At all times relevant hereto, Plaintiff Randy Primm ("Plaintiff") was an inmate at the Farmington Correctional Center in Farmington, Missouri. (Defendants' Statement of Uncontroverted Medical Facts ("Defendants' Facts"), ¶ 1). Defendant Thomas Finley, D.D.S. ("Dr. Finley") is a licensed dentist, who worked at Farmington Correctional Center from December 1, 2004, to February 4, 2008. (Id., ¶ 3).[1] Defendant Lois Cella ("Cella") is a registered nurse, who has worked for Correctional Medical Services as the site Health Services Administrator at Farmington Correctional Center since July 6, 2006. (Id., ¶ 2).

On July 31, 2007, Plaintiff complained of pain from his erupting wisdom teeth, and was evaluated by Dr. Finley. (Defendants' Facts, ¶ 7, citing Defendants' Exh. D-2). Dr. Finley noted that

---

[1] Dr. Finley worked for Jackson Institutional Dental Services, a private entity that contracted with Correctional Medical Services, another private entity, to provide dental care to inmates within the Missouri Department of Corrections. (Defendants' Facts, ¶ 3).

teeth ## 1 and 16 were in the process of eruption, malposed buccally (coming in sideways), and that teeth ## 17 and 32 were impacted. (Id.). Dr. Finley assessed Plaintiff as having pericoronitis, inflammation around the crown of a tooth, and submitted a request for Plaintiff to have his four wisdom teeth removed by an oral surgeon. (Id.). The referral request was approved on August 7, 2007. (Id.).

On August 21, 2007, Plaintiff's impacted teeth were surgically removed by non-defendant oral surgeon Gregory Pernoud. (Defendants' Facts, ¶ 8, citing Defendants' Exh. D-3). Dr. Pernoud noted the teeth had deep roots, which made the extractions difficult, but that there were no complications with the procedure and follow-up care would be routine. (Id.). Dr. Pernoud further noted that post-operative instructions and medications would be issued to Plaintiff at the prison facility by Dr. Finley. (Id.). Dr. Finley saw Plaintiff that same day, and issued him Amoxicillin, an oral antibiotic, and Naproxen, an oral non-steroidal, anti-inflammatory pain medication. (Id.). Dr. Finley gave Plaintiff written instructions on how to care for the surgical sites, and further issued a medical lay-in excusing Plaintiff from work and recreational activities for three days. (Id).

On August 23, 2007, Plaintiff self-declared an emergency, complaining of difficulty eating and swelling from the extractions. (Defendants' Facts, ¶ 9, citing Defendants' Exh. D-4). Plaintiff again was evaluated by Dr. Finley, who noted the swelling was within normal limits. (Id.). At that time Dr. Finley ordered that Plaintiff receive liquid nutrition for 48 hours, and further extended the medical lay-in through August 25, 2007. (Id.).

On August 26, 2007, Plaintiff again self-declared an emergency, maintaining he was out of Naproxen. (Defendants' Facts, ¶ 10, citing Defendants' Exh. D-5). The nurse who examined Plaintiff did not find a medical emergency, but did note Plaintiff was taking more tablets each day than called for by the prescription. (Id.).

On August 27, 2007, Plaintiff was evaluated by non-defendant nurse Louise Akins. (Defendants' Facts, ¶ 11, citing Defendants' Exh. D-6). Nurse Akins issued Tylenol for Plaintiff's pain, and instructed that he return the next day to be evaluated by a dentist. (Id.). Plaintiff returned on August 28, and was seen by Dr. Finley, who noted Plaintiff's recovery process was normal. (Id., ¶ 12, citing Defendants' Exh. D-7). Dr. Finley prescribed Naproxen for ten days. (Id.).

Dr. Finley next evaluated Plaintiff on November 19, 2007, for complaints of pain in his gum area. (Defendants' Facts, ¶ 15, citing Defendants' Exh. D-10). Dr. Finley noted Plaintiff's dental root base was exposed, with food debris in the area. (Id.). Dr. Finley applied hurriseal, a desensitizing agent applied to gum tissue, and issued oral peroxide mouthwash, designed to promote healing and keep the surgical site clean during the healing process. (Id.).

On or about August 30, 2007, Plaintiff submitted an Informal Resolution Request ("IRR"), complaining that he was not given a liquid diet after having his wisdom teeth surgically removed. (Defendants' Exh. D-12). Plaintiff maintained that as a result, he was forced to go without food for three days. (Id.). On September 11, 2007, Dr. Finley responded to Plaintiff's IRR in relevant part as follows:

> In review of your medical record, which I believe to be true and accurate, I find that you went to the oral surgeon on 8/21/07 and had all four wisdom teeth extracted.
>
> Be advised: Liquid diets are not routinely given after wisdom teeth extractions since the patient normally has enough remaining teeth to chew with and there is always something soft on the menu to eat.

(Id.).

On or about October 30, 2007, Plaintiff submitted an Offender Grievance related to his allegedly unresolved IRR, as follows:

> Yes, I had 4 wisdom teeth cut out and was refused a liquid diet when my case worker Mr. Klouse called and requested one for me. The dentist

- 3 -

> admits trauma was done to my mouth during surgery. And I know for a fact
> I couldn't chew. 3 days with no food violated my rights. My mother called
> the third day and spoke to the Assistance Super Attendant [sic] and instantly
> I was given a liquid diet. Case Worker Blair out of 6 house called me and said
> I was approved for it. Explain that. I went 3 days no food then I got a liquid
> diet, unbelievable?

(Defendants' Exh. D-12). Dr. Finley responded to Plaintiff's Offender Grievance on November 6, 2007, in relevant part as follows:

> In review of your medical record, which is believed to be true and
> accurate I find that on 08/21/2007, you went to the oral surgeon and had four
> teeth removed. You still had 25 teeth for chewing your food, which is more
> than adequate. Of all the hundreds of patients that have had this procedure
> done, you are the first one to complain about not being able to eat.

(Id.). On or about December 18, 2007, Plaintiff filed an Offender Grievance Appeal. (Id.). On February 7, 2008, non-defendant E. Jackson, the Missouri Director of Dental Services, responded to Plaintiff's Offender Grievance, as follows:

> I have reviewed your IRR and grievance. My findings are as follows:
>
> It is my understanding that you feel you should have received a liquid
> diet after you had four third molars (wisdom teeth) extracted.
>
>> This judgment was solely that of the dentist at the Farmington
>> Correctional Center with Dr. Finley.
>>
>> Dr. Finley has over 25 years of experience and has dealt with
>> situations such as yours several times. I respect Dr. Finley's
>> clinical skills and must agree with his dental expertise and
>> judgment.

(Id.).

In the instant Complaint, filed April 9, 2008, and brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants Dr. Finley and Cella violated his constitutional rights by demonstrating deliberate indifference to his serious medical needs. (Doc. No. 1). Specifically, Plaintiff maintains Defendants denied Plaintiff liquid nutrition for three days following his surgery, knowing he was

unable to ingest solid food during that time period. (Id., P. 6). As stated above, Defendants filed the instant Motion for Summary Judgment on December 3, 2008. (Doc. No. 25).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

As stated above, Plaintiff's claims against Dr. Finley and Cella are based on their alleged refusal to authorize a liquid diet for Plaintiff for three days following his surgery. (Compl., P. 13). The Eighth Circuit has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "To succeed on a claim of deprivation of medical care in violation of the Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs." Moots v. Lombardi, 2005 WL 4541944 at *5 (E.D. Mo. Feb. 10, 2005), citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted). A prison official acts with the requisite deliberate indifference when that official, "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

Upon consideration, the Court finds that assuming, arguendo, Plaintiff has established the existence of a serious medical need, he cannot show Dr. Finley or Cella exhibited deliberate indifference to that need. Rather, during his deposition Plaintiff acknowledged he was unsure as to whether either Defendant even knew of his request for liquid nutrition, as follows:

Q. (by Defendants' attorney):   Did you talk to Dr. Finley personally about getting a liquid diet?

A. (by Plaintiff): Yes. I had requested it through the caseworker, and he--the Caseworker Blare said that he spoke to the nurse, the dentist's assistant. And she said for me to chew what I--eat what I could in the kitchen. And I couldn't chew at all, you know, so I was very disappointed.

Q. Okay. So you got information from an officer--

A. From a caseworker.

Q. From a caseworker, who got it from a nurse, who allegedly got it from Dr. Finley?

A. *I don't know if she got it from Dr. Finley.* It was just--he told me that's who he spoke to.

Q. Okay. That he talked to the nurse?

A. Uh-huh.

Q. And that--okay. *So we don't know for a fact that Dr. Finley was involved in the decision?*

A. *No....*

Q. I mean, you're suing Dr. Finley for knowing of and disregarding an excessive risk of serious bodily harm due to deliberate indifference?

A. Right.

Q. *So is it possible that Dr. Finley didn't even know?*

A. *True....*

Q. Okay. Now, you didn't actually talk to Lois Cella, is that correct, about getting the liquid diet?

A. No. I went through the caseworker to try to get them to get it for me. They seemed to be able to make things happen a lot easier than you can yourself.

Q. Now, did he say, I talked to Lois Cella, or did he say, I talked to--

A. The dentist assistant.[2]

---

[2] In an affidavit attached to Defendants' Motion for Summary Judgment, Cella states that at no time was she a dental assistant for Dr. Finley, or any other dentist at the prison. (Defendants' Exh.

- 7 -

> Q. The dentist assistant?
>
> A. Assistant.
>
> Q. He didn't identify Lois by name?
>
> A. I think he knows who she is.
>
> Q. But he didn't say--
>
> A. He didn't--
>
> Q. --I talked to Lois Cella?
>
> A. *He didn't relay to me exactly what her name was.*
>
> Q. So, once again being totally fair, we don't know for a fact that Lois was the one he talked to?
>
> A. No, but he does.

(Defendants' Exh. D-14 (emphasis added)). In light of this testimony, the Court finds Plaintiff fails to establish Defendants knew about his alleged serious medical need. Defendants' Motion for Summary Judgment must therefore be granted.[3]

## **CONCLUSION**

Accordingly,

---

A, ¶ 8).

[3] The Court's review of Plaintiff's medical records similarly provides no evidence Defendants exhibited deliberate indifference to Plaintiff's serious medical needs. Rather, the records reveal that Dr. Finley evaluated Plaintiff upon his return from surgery on August 21, 2007, and again on August 23, August 28, and November 19, providing post-care instructions and prescriptions on each occasion. (Defendants' Exhs. D-3, D-4, D-7, D-10). With respect to Defendant Cella, Plaintiff's medical records indicate only that she provided Plaintiff with new glass frames on September 14, 2007. (Defendants' Exh. D-8). Plaintiff offers no evidence this care was less than adequate, and so Defendants' Motion for Summary Judgment must be granted on this basis as well.

**IT IS HEREBY ORDERED** that Defendants Dr. Finley and Lois Cella's Motion for Summary Judgment (Doc. No. 25) is **GRANTED**, and Plaintiff's claims against Defendants Dr. Finley and Lois Cella are **DISMISSED** with prejudice.


Dated this 26th day of February, 2009.

                                              /s/ Jean C. Hamilton
                                              UNITED STATES DISTRICT JUDGE